(No. 61386.—

# BATES & ROGERS CONSTRUCTION CORPORATION *et al.*, Appellants, v. GREELEY & HANSEN *et al.*, Appellees.

*Opinion filed November 21, 1985.*

Donald V. O'Brien, of O'Brien, O'Rourke, Hogan & McNulty, and LaDonna M. Loitz, of Deutsch, Levy & Engel, Chartered, all of Chicago, for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Kevin R. Sido, Stephen R. Swofford and Edward M. Crane, of counsel), for appellees.

JUSTICE SIMON delivered the opinion of the court:

This action stems from a construction project known as the Gurnee Sewage Treatment Plant which was let in 1973 by the North Shore Sanitary District (the District). Plaintiff Bates and Rogers Construction Corporation (Bates & Rogers) successfully bid on certain divisions of the project and entered into a contract with the District under which it was the general contractor. The other plaintiffs, Economy Mechanical Industries, Inc. (Economy), and Goldberg and O'Brien Electric Company (Goldberg), were two of Bates & Rogers' subcontractors, but they had no contract with the District. Defendants here are the engineering firm of Greeley & Hansen and the in-

dividual partners of that firm (Greeley). They were retained by the District to serve as engineers on the project, but they did not execute a contract with any of the plaintiffs.

Plaintiffs initially filed a complaint in 1977 in the circuit court of Lake County against Greeley and the District alleging breach of implied warranty, breach of implied covenant, and intentional interference with a contractual relationship. They also claimed interest on retainages held by the District. The circuit court dismissed two counts of the complaint, and plaintiffs subsequently filed an amended complaint against the same defendants making substantially the same allegations, but also adding a charge of negligence against Greeley. The circuit court dismissed all counts of the amended complaint and the plaintiffs appealed. The appellate court upheld the circuit court's action with respect to the counts against the District (except for the retainages count), but reversed and remanded with respect to the allegations against Greeley. (92 Ill. App. 3d 90.) Plaintiffs then filed a second amended complaint alleging negligence against Greeley and claiming retainages and interest from the District. Plaintiffs' dispute with the District was subsequently settled. The circuit court granted summary judgment for Greeley on the remaining negligence counts, and the appellate court affirmed. (128 Ill. App. 3d 962.) We granted plaintiff's petition for leave to appeal (94 Ill. 2d R. 315(a)).

In their second amended complaint, plaintiffs alleged that Greeley was negligent in designing electrical switchgear for the project, in failing to timely cure the design defects, in requiring a redesign of the switchgear after it had been ordered from the supplier, in failing to provide electrical service to the job site, and, more generally, in exercising its powers as engineer for the project. Plaintiffs claimed that Greeley's negligence caused them cost

overruns, including additional labor costs, labor "add-ons," excessive supervision, winter protection of the work, and increased overhead, bond, insurance and interest costs, as well as lost profits. Defendants moved for summary judgment on the ground that plaintiffs were seeking purely economic losses which could not be recovered in a negligence action. The circuit court granted the motion, and the appellate court affirmed, holding that plaintiffs' losses were solely economic.

On this appeal, in addition to the economic-loss argument, defendants claim that plaintiffs seek "delay damages," and that under the contract between Bates & Rogers and the District plaintiffs waived their right to recover such damages. We read the contract to bar the damages claimed here and thus do not reach the economic-loss issue on which the appellate court based its holding.

Article 3.05 of the agreement between Bates & Rogers, the contractor, and the District provides in relevant part:

> "The Contractor agrees *to make no claim for damages for delay in the performance of this Contract occasioned by any act or omission to act of the District or any of its representatives,* or because of any injunction which may be brought against the District or its representatives, and agrees that any such claim *shall be fully compensated for by an extension of time* to complete performance of the work as provided herein." (Emphasis added.)

Under the terms of the contract, the engineer, Greeley, is a "representative" of the District. Section 7 of the contract is entitled "POWERS OF THE DISTRICT'S REPRESENTATIVES." Immediately under the title appears "Article 7.01 The Engineer," followed by an exposition of the engineer's duties.

Plaintiffs do not suggest that a "no-damages-for-delay" clause, such as that included in article 3.05, is gen-

erally unenforceable; such an argument would, in any event, be unavailing, inasmuch as this court has consistently given effect to such clauses. (See *Herlihy Mid-Continent Co. v. Sanitary District* (1945), 390 Ill. 160; *Ryan Co. v. Sanitary District* (1945), 390 Ill. 173; *Underground Construction Co. v. Sanitary District* (1937), 367 Ill. 360.) Nor do plaintiffs contend that any exception to the general rule of enforceability of such clauses applies here. (See, *e.g., Kalisch-Jarcho, Inc. v. City of New York* (1983), 58 N.Y.2d 377, 448 N.E.2d 413, 461 N.Y.S.2d 746.) Plaintiffs' position is that the damages sought here do not constitute "delay damages." They are mistaken; delay damages are merely those damages caused by delay in the completion of a project. (See *Herlihy Mid-Continent Co. v. Sanitary District* (1945), 390 Ill. 160, 165.) Examination of the record in this case, as well as decisions in similar cases, reveals that the damages sought here in fact constitute delay damages.

Count I of the complaint, which relates to two of the contract divisions, states that, as a result of the negligent acts of Greeley, "no electrical service was furnished the work site until more than a year after the same was required, and plaintiffs were denied access to a material portion of the work, [and] the sequence of plaintiff's work was disrupted and burdened." As a "consequence of" these events, plaintiffs claimed that they suffered cost overruns and lost profits. Count II, which deals with two other contract divisions, sets forth essentially the same allegations.

A common sense reading of the complaint indicates that any damages the plaintiffs sustained, such as additional labor and supervision costs, increased overhead and lost profits, were caused by the delays in providing adequate electrical switchgear, which in turn resulted from defendants' alleged negligence. Plaintiffs, although disputing this interpretation, have offered no alternative

explanation. Moreover, at the discovery stage in this proceeding, plaintiffs expressly characterized their damages as resulting from delays. In their response to defendants' demand for a bill of particulars, plaintiffs explained, with respect to the allegation that they were denied access to the work, that "the *delay* in furnishing the electrical power denied them access to a material portion of the work." (Emphasis added.) Similarly, as to the charge that Greeley's negligence forced them to work out of sequence, plaintiffs stated:

"The numerous changes and *delays* relating to the switchgear resulted in an extreme *delay* in the delivery of the switchgear to the project site, *the result of which was* to change the progress of the work done on the project from that which was most efficient and orderly to piecemeal and out of sequence. The *delay* in obtaining the electrical power had the same effect ***." (Emphasis added.)

Finally, plaintiffs asserted that their progress had been burdened and winter protection required because of the previously described delays.

Plaintiffs' own characterization of the damages incurred as the result of delays compels the conclusion that such damages are covered by the no-damages-for-delay clause. Bates & Rogers agreed to the exculpatory clause, and undoubtedly the price at which it bid for the project reflected the possibility that delays could occur. We therefore hold Bates & Rogers to the plain words of the bargain it made. See *Underground Construction Co. v. Sanitary District* (1937), 367 Ill. 360, 371 ("the parties themselves have provided" the answer to the delay-damages claim); *Unicon Management Corp. v. City of Chicago* (7th Cir. 1968), 404 F.2d 627, 631 ("The City bargained for the right to delay ***").

This holding is consistent with the decisions of other courts which have ruled in similar situations. For instance, in *Ericksen v. Edmonds School District No. 15*

(1942), 13 Wash. 2d 398, 125 P.2d 275, the court held that a no-damages-for-delay clause prevented plaintiff from recovering damages resulting from the supervising architect's failure to correct plans and specifications in a timely manner. In *Corinno Civetta Construction Corp. v. City of New York* (1985), 107 A.D.2d 610, 483 N.Y.S.2d 1017, the plaintiff claimed that the city had breached the contract, *inter alia,* by providing inadequate working plans and by failing to properly coordinate the project so that plaintiff was forced to work out of sequence. The court held that, absent an allegation of bad faith or gross negligence, the no-damages-for-delay clause in the contract barred the claim. See also *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1980), 92 Ill. App. 3d 90, 94-95 (on the initial appeal of this case the exculpatory clause was held to bar plaintiffs' claim against the District for the same damages plaintiffs seek to recover against Greeley).

Plaintiffs next contend that, even if the damages claimed here are delay damages not permitted by the contract, the engineers cannot invoke this exculpatory provision because they are neither parties to the agreement between the District and Bates & Rogers nor third-party beneficiaries. Our view is that Greeley was a third-party beneficiary, and thus the no-damages-for-delay clause is available to it.

One is a third-party beneficiary of a contractual provision if the parties to a contract, or at least the promisee (here the District), intended that the agreement confer a benefit on him. (*People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 386.) That intent is " 'to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution.' " (*People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 385, quoting *Carson Pirie Scott &*

*Co. v. Parrett* (1931), 346 Ill. 252, 258.) In this case, the exculpatory clause of the contract and the contractually described relationship between the District and Greeley point to the conclusion that the District intended to extend the benefit of the clause to Greeley.

The exculpatory clause provides that Bates & Rogers shall make "no claim" for delay damages. Nothing in the language of the contract suggests that this provision is somehow limited to claims against the District; quite the opposite is in fact the case. Article 3.05 of the contract recognizes that claims for delay damages could be occasioned not only by the acts of the District, but also by acts of its representatives, and at the same time section 7 of the agreement tells us that the engineer is a representative of the District. Even in case of delays caused by the engineer, Bates & Rogers agreed by their contract that all delay-damages claims "shall be fully compensated for by an extension of time to complete performance of the work ***." The contractor being fully compensated according to the contract by the extension of time, other compensation was plainly not contemplated. Plaintiff's argument to the contrary would mean that the parties recognized that delays could be caused by the engineer, and, in that event, the District was to compensate Bates & Rogers fully for such delays by extending the performance time, but simultaneously the District intended to allow the contractor to seek additional compensation by the expedient of suing its representative, Greeley. The plain language of the contract rejects such a reading; instead, as we construe the contract, the parties intended to extend the benefit of the exculpatory clause to Greeley.

This conclusion is supported by consideration of the relationship between the District and Greeley described in the contract. Although the board of trustees of the District had the power to make final determinations of

questions under the contract, to modify the contract, and to suspend work, the contract placed the engineer in charge of the day-to-day management of the project. The contract specifies at length the responsibilities of the engineer; these included the duty to observe the work, to determine the amount, kind, quality, sequence, and location of the work, and to coordinate the various contractors. The agreement states that "it is the intent of this contract that all of the work shall be subject to his [the engineer's] determinations, direction, and approval" unless specifically provided otherwise. In short, the District was largely relying on the professional skill of the engineer to protect its interests. Given that relationship, it is logical that the District would contract to exculpate the engineer from damages for delay in order to ensure that the engineer would exercise its best judgment and discretion in favor of the District. Had the District not done so, Greeley's ability to act for the District could have been impaired by the threat of lawsuits by contractors adversely affected by the engineer's determinations, for example, as to the sequence in which work should be performed.

We also note that, under article 11.05 of the contract, Bates & Rogers agreed not to make claims against any individuals including officers, agents, and employees of the District. The complaint alleges that defendants were agents of the District; moreover, article 1.02(c) of the contract clearly establishes that the term "agent" includes the engineer. Therefore, no claim against the individual defendants would be possible even absent the no-damages-for-delay provision.

The final question is whether the exculpatory clause and article 11.05 bind the two subcontractors, Economy and Goldberg, who were not parties to the agreement between Bates & Rogers and the District. Despite the lack of a contractual relationship between the subcon-

tractors and the District, we believe that Economy and Goldberg are also precluded from claiming the damages sought here.

Article 4.01 of the contract between Bates & Rogers and the District states in relevant part:

"The Contractor shall promptly, upon request, file with the District a conformed copy of the subcontract. *The Contractor shall cause appropriate provisions to be inserted in all subcontracts, relative to the work, to bind subcontractors to the Contractor by the terms of these Contract Documents, insofar as applicable to the work of subcontractors* * * *." (Emphasis added.)

The subcontracts entered into by Economy and Goldberg are not a part of the record. In the absence of those documents, we must presume that Bates & Rogers carried out its duty under the contract with the District to bind its subcontractors to the terms of the main contract. Inasmuch as the no-damages-for-delay clause was a provision of the general contract which could apply to the subcontractors, we believe that clause was one which was required to be inserted in all subcontracts for the benefit of the District and its representatives. Because of their knowledge of the requirements the District imposed on Bates & Rogers, those requirements would bind Economy and Goldberg even if the specific provisions which should have been included in the subcontracts were omitted. This conclusion is also consistent with the parties' intent to protect the District and Greeley from delay-damages claims. Thus, the subcontractors, like Bates & Rogers, are bound by the provisions prohibiting claims for delay damages and claims against individuals.

For the foregoing reasons, we affirm the judgment of the appellate court.

*Judgment affirmed.*