L. K. COMSTOCK & COMPANY, INC., Plaintiff-Appellant, v. THE MORSE/UBM JOINT VENTURE *et al.*, Defendants-Appellees.

First District (4th Division)   No. 86—0462

Opinion filed March 12, 1987.

O'Halloran, Lively & Walker, of Northbrook (Paul T. Lively, of counsel), for appellant.

Katten, Muchin, Zavis, Pearl, Greenberger & Galler, of Chicago (David M. Meister, Timothy J. Patenode, and Patrick S. Munzer, of counsel), for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

Plaintiff, L. K. Comstock (Comstock), contracted with the State of Illinois, acting by and through the Capital Development Board (CDB), to perform certain electrical construction on the University of Illinois replacement hospital project. The CDB, in turn, contracted with the defendants, Morse/Diesel, Inc. of Illinois, UBM, Inc., and the Morse/UBM Joint Venture, to act as the CDB's construction manager for this project. For convenience, the defendants in this appeal will be referred to as the construction manager. No contract was entered into by Comstock and the construction manager.

Comstock brought this action against the construction manager for damages in excess of $4.2 million arising out of a 23-month delay that Comstock encountered in performing its contract with the CDB. Count I of Comstock's complaint alleges that the construction manager caused this delay, thereby breaching its duty to Comstock, by failing to, among other things, coordinate, direct, supervise, organize, and expedite the construction project. Count III alleged that these failures by the construction manager were also a breach of the contract between the CDB and the construction manager and that Comstock was an intended third-party beneficiary of the CDB construction-manager contract who could therefore bring suit against the construction manager. The construction manager moved for summary judgment with respect to counts I and III and moved to dismiss count II. The trial court granted the construction manager's motions. Comstock appeals the granting of the motion for summary judgment as to counts I and III and the denial of Comstock's motion for rehearing, which requested leave to amend the complaint. No appeal is taken

with respect to count II.

Resolution of the issues on appeal depends upon the construction of various provisions contained in the contract between the CDB and Comstock, principally the no-damage-for-delay provision contained in paragraph 4—12(C).

Paragraph 4—12(C) provides:

> "C. The Contractor [Comstock] shall not be entitled to any claim for damaged [*sic*] or compensation from CDB on account of any delays \*\*\*."

Both parties argue on appeal that this provision warrants judgment in their favor. Comstock argues that, in light of the fact that some provisions in the contract specifically refer to the construction manager with regard to claims and delays and that paragraph 4—12(C) does not mention the construction manager, paragraph 4—12(C) does not bar claims for delay by Comstock against the construction manager. Alternatively, Comstock suggests that paragraph 4—12(C) is ambiguous and thus raises a question of fact which would preclude summary judgment.

In contrast, the construction manager argues that it is entitled to the protection of paragraph 4—12(C) because the construction manager is a third-party beneficiary of the no-damage-for-delay provision, is entitled to the CDB's privileges when performing the CDB's responsibilities, and is released from liability for delay to the same extent that the CDB is released. In support of its arguments, the construction manager primarily relies upon the case of *Bates & Rogers Construction Corp. v. Greeley & Hansen* (1985), 109 Ill. 2d 225, 486 N.E.2d 902.

In *Bates & Rogers*, the plaintiff-contractor, Bates & Rogers, entered into a contract with the North Shore Sanitary District (District). The defendants were retained by the District as engineers for the project. As in this case, the defendants-engineers did not execute a contract with the plaintiffs. The plaintiffs sought damages from the defendants on the grounds that the defendants were negligent in, among other things, exercising their powers as engineers for the project. After determining that the type of damages sought by the plaintiffs were in fact delay damages, the court addressed the issue of whether the exculpatory provision agreed to by the plaintiffs in their agreement with the District also barred suit against the defendants. That exculpatory provision provided:

> " 'The Contractor agrees to make no claim for damages for delay in the performance of this Contract occasioned by any act or omission to act of the District or any of its representatives,

or because of any injunction which may be brought against the District or its representatives, and agrees that any such claim shall be fully compensated for by an extension of time to complete performance of the work as provided herein.' " (Emphasis omitted.) 109 Ill. 2d 225, 229.

The plaintiffs in *Bates & Rogers* argued that the defendants could not invoke this provision because the defendants were neither parties to the agreement between the plaintiffs and the District nor were they third-party beneficiaries of that agreement. The Illinois Supreme Court, however, held that the defendants were third-party beneficiaries and therefore were entitled to the protection of the no-damage-for-delay clause.

■ In determining whether the parties intended the defendants to be third-party beneficiaries, the court in *Bates & Rogers* relied upon various provisions in the contract and the circumstances surrounding the parties. The court first noted that the exculpatory provision specifically recognized that claims arising out of delays could be occasioned by the District and its representatives. The defendants were, in another provision of the contract, named as the District's representative. The court also noted that the provision provided that the plaintiffs would be fully compensated by an extension of time for any delay-damages claim. Additionally, the court examined the contractual relationship between the District and the defendants, particularly the extent of responsibility that the defendants had over the management of the project. In light of these factors, the court concluded that because the District was relying extensively upon the skill of the defendants in the operation of the project, it was logical that the District intended to exculpate the defendants from damage claims to ensure that the defendants would exercise their best judgment in regard to the District's interests. (*Bates & Rogers Construction Corp. v. Greeley & Hansen* (1985), 109 Ill. 2d 225, 234, 486 N.E.2d 902.) The court went on to note that if this were not the case, the defendants' ability to act in the interest of the District would be impaired by the threat of lawsuits.

Comstock argues that *Bates & Rogers* does not apply to this case because the exculpatory provision here does not specifically refer to the CDB's representative, nor does it expressly state that an extension of time is the sole remedy. Accordingly, Comstock argues, this court should not imply the same protection to the defendants here that was granted in *Bates & Rogers*. We do not agree.

The contract between the CDB and Comstock expressly provides in article 3—01 that the construction manager is a representative of

the CDB and has the power to act on the CDB's behalf. Article 5 of the contract lists the duties, rights, and responsibilities of the construction manager. These responsibilities are extensive. They include not only maintaining the start and finish times of each component activity in the project, but also coordinating the management of all the contractors and procedures of construction. Additionally, as stated in paragraph 5A—01, the construction manager was to assist the CDB in asserting its rights and performing its responsibilities in connection with the project. Moreover, as Comstock points out, the construction manager essentially had supervision and control over seven phases of the project, ranging from program analysis to project close-out.

Given this amount of responsibility, we believe that although paragraph 4—12(C) is not identical to the clause in *Bates & Rogers*, the differences noted here by Comstock do not sufficiently distinguish that case. In our opinion, the more important factor is that the same type of contractual relationship that existed in *Bates & Rogers*, as exemplified by the significant responsibility under the contract, is present in this case. Consequently, the same concerns noted by the Illinois Supreme Court, namely, the ability of the contractor to act for the District, equally apply here. Accordingly, we believe that under this rationale of *Bates & Rogers*, the CDB would also intend to protect the construction manager from claims so that the construction manager's ability to act for the CDB would not be impaired.

In addition to arguing that *Bates & Rogers* is distinguishable from this case, Comstock argues that various other provisions in the contract evince an intent that claims will be brought against the construction manager. Comstock points to paragraphs 4—12(A), 4—14(F), and 8—01 in this regard. Simply stated, paragraph 4—14(F) provides that if one contractor causes loss to another contractor and that other contractor brings an action against the construction manager, the contractor who caused the loss must defend and save harmless the construction manager. Rather than supporting Comstock's position, we believe that this provision is further support for the fact that it was the intent of the agreement to protect the construction manager from suit. As for paragraph 8—01, this provision in essence provides that a contractor shall not be required to indemnify the construction manager from claims that arise out of the construction manager's own negligence. This provision, however, is merely a statement of the law in Illinois that a contractor may not indemnify himself from his own negligence. (Ill. Rev. Stat. 1985, ch. 29, par. 61; *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 499, 336 N.E.2d 881.) As to paragraph 4—12(A), this paragraph provides in pertinent part that the

contract time shall be extended if delays occur as a result of the acts or omissions of the construction manager. Although this section refers to the construction manager with respect to delays and claims, we do not believe that when reading this document as a whole, this reference militates against our interpretation of the contract as demonstrating an intent to benefit the construction manager.

■ Comstock alternatively argues that paragraph 4—12(C) is ambiguous. A contract is ambiguous when its terms are reasonably capable of interpretation in more than one way. (*Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 937, 445 N.E.2d 901.) The mere fact, however, that the parties do not agree upon the meaning of the terms does not create an ambiguity. (*Board of Education v. Chicago Teachers Union* (1980), 89 Ill. App. 3d 861, 866, 412 N.E.2d 587.) The question of whether an ambiguity exists is a question of law for the court. (*UIDC Management, Inc. v. Sears Roebuck & Co.* (1986), 141 Ill. App. 3d 227, 230, 490 N.E.2d 164.) In determining whether an ambiguity exists, the court must construe the contract as a whole. (*State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 1063, 419 N.E.2d 601.) In light of our decision that a reading of the document as a whole reflects an intent to benefit the construction manager, we do not find an ambiguity and thus no question of fact in this regard.

■ Comstock also argues on appeal that the trial court erred in denying its request to amend its complaint. Comstock argues that it should be granted leave to amend so as to allege an exception to the absolute bar of the exculpatory provision in paragraph 4—12(C). This court has recognized exceptions to exculpatory clauses which could, under the proper facts, prevent the bar of those clauses. As this court stated in *Bates & Rogers*, exculpatory clauses have been held inapplicable where, for example, the contractee is not acting in good faith, the delay is unreasonable in duration, the cause of the delay is not within the contemplation of the parties, or the delay is attributable to inexcusable ignorance or incompetence of the engineer. *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1980), 92 Ill. App. 3d 90, 95, 414 N.E.2d 1274, citing 74 A.L.R.3d 187 (1976), *appeal from remand* (1984), 128 Ill. App. 3d 962, 471 N.E.2d 915, *aff'd* (1985), 109 Ill. 2d 225, 486 N.E.2d 902.

■ The decision of whether or not to allow an amendment to a complaint rests within the discretion of the trial court and will not be reversed absent a showing of abuse of that discretion. (*Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 250, 423 N.E.2d 1170.) We see no reason in this case which should preclude Comstock

from amending its complaint. There does not appear to be any prejudice that would result to the defendant nor has Comstock repeatedly amended its complaint. Consequently, although we make no decision as to whether the facts presented thus far by Comstock would sufficiently fall within a recognized exception, we believe that it was error not to allow Comstock the opportunity to amend its complaint in this regard.

■ Comstock's final argument is that the trial court erred in granting summary judgment as to count III because Comstock is a third-party beneficiary of the contract between the construction manager and the CDB and therefore has the right to bring an action against the construction manager for breach of the contract between the CDB and the construction manager. Whether one is to be considered a third-party beneficiary depends upon the intention of the parties as that intention is gleaned from the contract and circumstances surrounding the parties at the time of its execution. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257-58, 178 N.E. 498.) In this case, as we decided above, paragraph 4—12(C) of the contract between the CDB and Comstock was also intended to protect the construction manager to ensure that the construction manager could use its best judgment in favor of the CDB's interests. If Comstock were able to bring a claim against the construction manager, as third-party beneficiary of the CDB and construction manager's contract, then in all likelihood the construction manager would seek indemnification from the CDB. This would, in effect, defeat the very purpose of the exculpatory provision in paragraph 4—12(C) and would be inconsistent with that paragraph. Consequently, we do not believe that Comstock was intended to be a third-party beneficiary.

For the foregoing reasons, the decision of the trial court granting summary judgment as to count I is affirmed in part and reversed and remanded to the extent that Comstock should be given leave to amend its complaint in accordance with this decision. The granting of summary judgment with respect to count III is affirmed.

Affirmed in part, and reversed and remanded in part.

JOHNSON and LINN, JJ., concur.