ADAMS, Respondent, v. JARVIS and another, Appellants.*

*March 6—April 13, 1964.*

[10] *State ex rel. Casper v. Burke, supra.*
\* Motion for rehearing denied, with costs, on June 2, 1964.

For the appellants there was a brief by *Theiler & Seroogy* of Tomahawk, and *O'Melia & Kaye* of Rhinelander, and oral argument by *Donald C. O'Melia.*

For the respondent there was a brief by *Schmitt, Wurster & Tinglum* of Merrill, and oral argument by *Sverre Tinglum.*

BEILFUSS, J. 1. Does a withdrawal of a partner constitute a dissolution of the partnership under sec. 123.25, Stats., notwithstanding a partnership agreement to the contrary?

2. Is plaintiff, as withdrawing partner, entitled to a share of the accounts receivable?

*Withdrawal.*

Sec. 123.25, Stats., states:

"DISSOLUTION OF PARTNERSHIP DEFINED. (1) The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.

"(2) On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."

The partnership agreement as set forth above (paragraph 15) specifically provides that the partnership shall not terminate by the withdrawal of a partner. We conclude the parties clearly intended that even though a partner withdrew, the partnership and the partnership business would continue for the purposes for which it was organized. Paragraph 18 of the agreement provides for a dissolution upon agreement of the parties in the sense that the partnership would cease to function as such subject to winding up of its affairs.

While the withdrawal of a partner works a dissolution of the partnership under the statute as to the withdrawing partner, it does not follow that the rights and duties of remaining partners are similarly affected. The agreement contemplates a partnership would continue to exist between the remaining partners even though the personnel constituting the partnership was changed.

Persons with professional qualifications commonly associate in business partnerships. The practice of continuing the operation of the partnership business, even though there are some changes in partnership personnel, is also common. The reasons for an agreement that a medical partnership should

continue without disruption of the services rendered is self-evident. If the partnership agreement provides for continuation, sets forth a method of paying the withdrawing partner his agreed share, does not jeopardize the rights of creditors, the agreement is enforceable. The statute does not specifically regulate this type of withdrawal with a continuation of the business. The statute should not be construed to invalidate an otherwise enforceable contract entered into for a legitimate purpose.

The provision for withdrawal is in effect a type of winding up of the partnership without the necessity of discontinuing the day-to-day business. Sec. 123.33, Stats., contemplates a discontinuance of the day-to-day business but does not forbid other methods of winding up a partnership.

The agreement does provide that Dr. Adams shall no longer actively participate and further provides for winding up the affairs insofar as his interests are concerned. In this sense his withdrawal does constitute a dissolution. We conclude, however, that when the plaintiff, Dr. Adams, withdrew, the partnership was not wholly dissolved so as to require complete winding up of its affairs, but continued to exist under the terms of the agreement. The agreement does not offend the statute and is valid.

*Accounts Receivable.*

Sec. 123.33 (1), Stats., provides:

"APPLICATION OF PARTNERSHIP PROPERTY ON DISSOLUTION. (1) When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnerships, unless otherwise agreed, may have the partnership properly applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners. But if dissolution is caused by expulsion of a partner, bona fide

under the partnership agreement, and if the expelled partner is discharged from all partnership liabilities, either by payment or agreement under the provisions of s. 123.31 (2) he shall receive in cash only the net amount due him from the partnership."

The trial court concluded that the withdrawal constituted a statutory dissolution; that partnership assets shall be liquidated pursuant to the statute and that the plaintiff was entitled to a one-third interest in the accounts receivable.[1]

Sec. 123.33, Stats., applies only "unless otherwise agreed." The distribution should therefore be made pursuant to the agreement.

Paragraphs 15 and 16 of the contract as set forth above provide for the withdrawal of a partner and the share to which he is entitled. Subject to limitations not material here, paragraph 16 provides that a withdrawing partner shall receive (1) any balance to his credit on partnership books, (2) his proportionate share of profits calculated on a fiscal-year basis, and (3) his capital account as of the date of his withdrawal. Paragraph 16 further provides that in event of withdrawal "any and all accounts receivable for any current year and any and all years past shall remain the sole possession and property of the remaining member or members of THE TOMAHAWK CLINIC."

The plaintiff contends that provision of the agreement denying him a share of the accounts receivable works a forfeiture and is void as being against public policy.

We conclude the parties to the agreement intended accounts receivable to be restricted to customer or patient accounts receivable.

The provision of the agreement is clear and unambiguous. There is nothing in the record to suggest the plaintiff's bar-

---

[1] Sec. 123.35, Stats., sets forth statutory rules for settling accounts between partners on dissolution.

gaining position was so unequal in the negotiations leading up to the agreement that the provision should be declared unenforceable upon the grounds of public policy. Legitimate business and goodwill considerations are consistent with a provision retaining control and ownership of customer accounts receivable in an active functioning professional medical partnership. We hold the provision on accounts receivable enforceable.[2]

Because of our determination that the partnership agreement is valid and enforceable the judgment of the trial court insofar as it decrees a dissolution of the partnership and a one-third division of the accounts receivable to the plaintiff must be reversed and remanded to the trial court with directions to enter judgment in conformity with this opinion.

The trial court properly retained jurisdiction for the purpose of granting supplementary relief to plaintiff to enforce a distribution to the plaintiff. The trial court may conduct such proceedings as are necessary to effectuate a distribution pursuant to the agreement.

The parties have stipulated that the plaintiff ceased to be an active partner as of June 1, 1961. The agreement provides that the partnership fiscal year shall coincide with the calendar year. It further provides that his share of the partnership profits upon withdrawal shall be calculated upon the whole year and in proportion to his participation of the whole fiscal year. He is, therefore, entitled to $5/12$ths of $1/3$d, or $5/36$ths of the profits for the fiscal year ending December 31, 1961.

Such of the accounts receivable as were collected during the year 1961 do constitute a part of the profits for 1961. The plaintiff had no part of the management of the partner-

---

[2] The same conclusions were reached in *Delvin v. Rockey* (7th Cir. 1961), 295 Fed. (2d) 266. The United States court of appeals for the Seventh circuit construed the same provisions of the Uniform Partnership Act as enacted by Illinois as applied to a contract that was substantially similar to the contract under consideration here.

ship after June 1, 1961; however, his eventual distributive share of profits is dependent, in some degree, upon the management of the business affairs and performance of the continuing partners for the remainder of the fiscal year. Under these circumstances the continuing partners stand in a fiduciary relationship to the withdrawing partner and are obligated to conduct the business in a good-faith manner including a good-faith effort to liquidate the accounts receivable consistent with good business practices.[3]

*By the Court.*—Judgment reversed with directions to conduct supplementary proceedings to determine distributive share of plaintiff and then enter judgment in conformity with this opinion.

---

[3] Sec. 123.18, Stats.; *Smith v. Howard* (1955), 76 Idaho 235, 280 Pac. (2d) 1060.