PAV-SAVER CORPORATION, Plaintiff-Appellee, v. VASSO CORPORA-TION, Defendant-Appellant (Vasso Corporation *et al.*, Counterplaintiffs and Third Party Plaintiff-Appellants, v. Pav-Saver Corporation *et al.*, Counter-defendant and Third Party Defendants-Appellees).

Third District   No. 3—85—0167

Opinion filed May 23, 1986.

STOUDER, J., concurring in part and dissenting in part.

Frederick P. Kopp, of Spector, Tappa, Kopp & Nathan, of Rock Island, for appellant.

William R. Stengel, Jr., of Coyle, Gilman & Stengel, of Rock Island, for appellee.

JUSTICE BARRY delivered the opinion of the court:

This matter before us arises out of the dissolution of the parties' partnership, the Pav-Saver Manufacturing Company. The facts are not in dispute, and only those needed to explain our disposition on the issues on appeal will be stated.

Plaintiff, Pav-Saver Corporation (PSC), is the owner of the Pav-Saver trademark and certain patents for the design and marketing of concrete paving machines. Harry Dale is the inventor of the Pav-Saver "slip-form" paver and the majority shareholder of PSC, located in Moline. H. Moss Meersman is an attorney who is also the owner and sole shareholder of Vasso Corporation. In 1974 Dale, individually, together with PSC and Meersman, formed Pav-Saver Manufacturing Company for the manufacture and sale of Pav-Saver machines. Dale agreed to contribute his services, PSC contributed the patents and trademark necessary to the proposed operation, and Meersman agreed to obtain financing for it. The partnership agreement was

drafted by Meersman and approved by attorney Charles Peart, president of PSC. The agreement contained two paragraphs which lie at the heart of the appeal and cross-appeal before us:

"3. The duties, obligations and functions of the respective partners shall be:

A. Meersman shall provide whatever financing is necessary for the joint venture, as required.

B. (1) PAV-SAVER shall grant to the partnership without charge the exclusive right to use on all machines manufactured and sold, its trademark 'PAV-SAVER' during the term of this Agreement. In order to preserve and maintain the good will and other values of the trademark PAV-SAVER, it is agreed between the parties that PAV-SAVER Corporation shall have the right to inspect from time to time the quality of machines upon which the licensed trademark PAV-SAVER is used or applied on machines for laying concrete pavement where such machines are manufactured and/or sold. Any significant changes in structure, materials or components shall be disclosed in writing or by drawings to PAV-SAVER Corporation.

(2) PAV-SAVER grants to the partnership exclusive license without charge for its patent rights in and to its Patent #3,377,933 for the term of this agreement and exclusive license to use its specifications and drawings for the Slip-form paving machine known as Model MX 6—33, plus any specifications and drawings for any extensions, additions and attachments for said machine for said term. It being understood and agreed that same shall remain the property of PAV-SAVER and all copies shall be returned to PAV-SAVER at the expiration of this partnership. Further, PAV-SAVER, so long as this agreement is honored and is in force, grants a license under any patents of PAV-SAVER granted in the United States and/or other countries applicable to the Slip-Form paving machine.

\* \* \*

11. It is contemplated that this joint venture partnership shall be permanent, and same shall not be terminated or dissolved by either party except upon mutual approval of both parties. If, however, either party shall terminate or dissolve said relationship, the terminating party shall pay to the other party, as liquidated damages, a sum equal to four (4) times the gross royalties received by PAV-SAVER Corporation in the fiscal year ending July 31, 1973, as shown by their corporate financial statement. Said liquidated damages to be paid over a

ten (10) year period next immediately following the termination, payable in equal installments."

In 1976, upon mutual consent, the PSC/Dale/Meersman partnership was dissolved and replaced with an identical one between PSC and Vasso, so as to eliminate the individual partners.

It appears that the Pav-Saver Manufacturing Company operated and thrived according to the parties' expectations until around 1981, when the economy slumped, sales of the heavy machines dropped off significantly, and the principals could not agree on the direction that the partnership should take to survive. On March 17, 1983, attorney Charles Peart, on behalf of PSC, wrote a letter to Meersman terminating the partnership and invoking the provisions of paragraph 11 of the parties' agreement.

In response, Meersman moved into an office on the business premises of the Pav-Saver Manufacturing Company, physically ousted Dale, and assumed a position as the day-to-day manager of the business. PSC then sued in the circuit court of Rock Island County for a court-ordered dissolution of the partnership, return of its patents and trademark, and an accounting. Vasso counter-claimed for declaratory judgment that PSC had wrongfully terminated the partnership and that Vasso was entitled to continue the partnership business, and other relief pursuant to the Uniform Partnership Act (Ill. Rev. Stat. 1983, ch. 106½, par. 1 *et seq.*). Other related suits were filed, but need not be described as they are not relevant to the matters before us. After protracted litigation, the trial court ruled that PSC had wrongfully terminated the partnership; that Vasso was entitled to continue the partnership business and to possess the partnership assets, including PSC's trademark and patents; that PSC's interest in the partnership was $165,000, based on a $330,000 valuation for the business; and that Vasso was entitled to liquidated damages in the amount of $384,612, payable pursuant to paragraph 11 of the partnership agreement. Judgment was entered accordingly.

Both parties appealed. PSC takes issue with the trial court's failure to order the return of its patents and trademark or, in the alternative, to assign a value to them in determining the value of the partnership assets. Further, neither party agrees with the trial court's enforcement of their agreement for liquidated damages. In its cross-appeal, PSC argues that the amount determined by the formula in paragraph 11 is a penalty. Vasso, on the other hand, contends in its appeal that the amount is unobjectionable, but the installment method of payout should not be enforced.

In addition to the aforecited paragraphs of the parties' partner-

ship agreement, the resolution of this case is controlled by the dissolution provision of the Uniform Partnership Act (Ill. Rev. Stat. 1983, ch. 106½, pars. 29 through 43). The Act provides:

"(2). When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows:

(a) Each partner who has not caused dissolution wrongfully shall have,

\* \* \*

II. The right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement.

(b) The partners who have not caused the dissolution wrongfully, if they all desire to continue the business in the same name, either by themselves or jointly with others, may do so, during the agreed term for the partnership and for that purpose may possess the partnership property, provided they secure the payment by bond approved by the court, or pay to any partner who has caused the dissolution wrongfully, the value of his interest in the partnership at the dissolution, less any damages recoverable under clause (2a II) of this section, and in like manner indemnify him against all present or future partnership liabilities.

(c) A partner who has caused the dissolution wrongfully shall have:

\* \* \*

II. If the business is continued under paragraph (2b) of this section the right as against his co-partners and all claiming through them in respect of their interests in the partnership, to have the value of his interest in the partnership, less any damages caused to his co-partners by the dissolution, ascertained and paid to him in cash, or the payment secured by bond approved by the court and to be released from all existing liabilities of the partnership; but in ascertaining the value of the partner's interest the value of the good will of the business shall not be considered." Ill. Rev. Stat. 1983, ch. 106½, par. 38(2).

■ Initially we must reject PSC's argument that the trial court erred in refusing to return Pav-Saver's patents and trademark pursuant to paragraph 3 of the partnership agreement, or in the alternative that the court erred in refusing to assign a value to PSC's property in valuing the partnership assets. The partnership agreement on its face contemplated a "permanent" partnership, terminable only upon mu-

tual approval of the parties (paragraph 11). It is undisputed that PSC's unilateral termination was in contravention of the agreement. The wrongful termination necessarily invokes the provisions of the Uniform Partnership Act so far as they concern the rights of the partners. Upon PSC's notice terminating the partnership, Vasso elected to continue the business pursuant to section 38(2)(b) of the Uniform Partnership Act. As correctly noted by Vasso, the statute was enacted "to cover comprehensively the problem of dissolution *** [and] to stabilize business." (*Kurtzon v. Kurtzon* (1950), 339 Ill. App. 431, 437, 90 N.E.2d 245, 248.) Ergo, despite the parties contractual direction that PSC's patents would be returned to it upon the mutually approved expiration of the partnership (paragraph 3), the right to possess the partnership property and continue in business upon a wrongful termination must be derived from and is controlled by the statute. Evidence at trial clearly established that the Pav-Saver machines being manufactured by the partnership could not be produced or marketed without PSC's patents and trademark. Thus, to continue in business pursuant to the statutorily granted right of the party not causing the wrongful dissolution, it is essential that paragraph 3 of the parties' agreement—the return to PSC of its patents—not be honored.

■ Similarly, we find no merit in PSC's argument that the trial court erred in not assigning a value to the patents and trademark. The only evidence adduced at trial to show value of this property was testimony relating to good will. It was unrefuted that the name Pav-Saver enjoys a good reputation for a good product and reliable service. However, inasmuch as the Uniform Partnership Act specifically states that "the value of the good will of the business shall not be considered" (Ill. Rev. Stat. 1983, ch. 106½, par. 38(c)(II)), we find that the trial court properly rejected PSC's good-will evidence of the value of its patents and trademark in valuing its interest in the partnership business.

■ Next, we find no support for PSC's argument that the amount of liquidated damages awarded to Vasso pursuant to the formula contained in paragraph 11 of the parties' agreement is a "penalty." the test for determining whether a liquidated damages clause is valid as such or void as a penalty is stated in section 356 of the Restatement (Second) of Contracts:

"(1) Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably

large liquidated damages is unenforceable on grounds of public policy as a penalty." (Restatement (Second) of Contracts sec. 356 (1981).)

The burden of proving that a liquidated damages clause is void as a penalty rests with the party resisting its enforcement.

PSC has not and does not argue that the amount of liquidated damages was unreasonable. (Significantly, neither party purported to establish that actual damages suffered by Vasso were either more or less than $384,612.) PSC now urges, however, that "[t]he ascertainment of the value of the Pav Saver partnership for purposes of an accounting are [sic] easily ascertained. The accountants maintain detailed records of accounts payable and receivable and all equipment." In advancing this argument, PSC misconstrues the two-part test of a penalty: (1) whether the amount fixed is reasonable in light of the anticipated or actual loss caused by the breach; and (2) the difficulty of proving a loss has occurred, or establishing its amount with reasonable certainty. The difficulty or ease of proof of loss is a matter to be determined at the time of contracting—not, as PSC suggests, at the time of the breach. See Restatement (Second) of Contracts sec. 356, comment b (1981).

It appears clear from the record that Meersman, with some insecurity about his partner's long-term loyalty to the newly formed partnership, insisted on a liquidated damages provision to protect his financial interests. Nonetheless the record discloses that the agreement was reviewed by Peart and not signed until it was acceptable to both parties. As of December 31, 1982, the date of its last financial statement prior to trial, Pav-Saver Manufacturing Company carried liability on notes owed to various banks amounting to $269,060. As of December 31, 1981, the loans outstanding amounted to $347,487. These loans, the record shows, were obtained primarily on the basis of Meersman's financial ability to repay and over his signature individually. The amount of liquidated damages computed according to the formula in the parties agreement—$384,612—does not appear to be greatly disproportionate to the amount of Meersman's personal financial liability. As earlier stated, the slip-form Pav-Saver machines could not be manufactured and marketed as such without the patents and trademark contributed by Pav-Saver Corporation. Likewise, the services of Dale were of considerable value to the business.

■ In sum, we find there is no evidence tending to prove that the amount of liquidated damages as determined by the formula was unreasonable. Nor can we say based on the evidence of record that actual damages (as distinguished from a mere accounting) were readily

susceptible to proof at the time the parties entered into their agreement. Suffice it to say, the liquidated damages clause in the parties' agreement appears to have been a legitimate matter bargained for between parties on equal footing and enforceable upon a unilateral termination of the partnership. We will not disturb the trial court's award of damages to Vasso pursuant to the liquidated damages formula.

We turn next to Vasso's arguments urging reversal of the trial court's decision to enforce paragraph 11 of the parties' agreement with respect to the manner of paying out the amount of damages determined by the formula. The paragraph provides for the liquidated sum to be paid out in equal installments over a 10-year period. The trial court held that the $384,612 owed by PSC should be paid in 120 monthly installments of $3205.10 each commencing with March 17, 1983. In support of its argument that it was entitled to a setoff of the full amount of liquidated damages, including the unaccrued balance, Vasso argues that the doctrine of equitable setoff should apply on these facts and further urges that such setoff is required by statute.

In considering whether the liquidated damages formula contained in paragraph 11 of the partnership agreement was enforceable, we necessarily scrutinized the totality of the agreement—not merely the dollar figure so determined. Certainly at first blush the formula appears to yield a suspiciously high amount that is not directly related to any anticipated damages that either party might incur upon a wrongful termination of the agreement by the other. The manner of payout however—equal installments over a 10-year period—appears to temper the effect that the amount of liquidated damages so determined would have on the party who breached the agreement. In our opinion, the validity of the clause is greatly influenced by the payout provision. What might have been a penalty appears to be a fairly bargained-for, judicially enforceable, liquidated damages provision. While, in hindsight, Vasso may sense the same insecurity in enforcement of the paragraph *in toto* that Meersman had hoped to avoid by insisting on the provision in 1974 and 1976, Vasso's concerns of PSC's potential insolvency are neither concrete nor sufficiently persuasive to entitle it to a right of setoff.

The primary authority cited in support of Vasso's equitable setoff argument (*North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co.* (1894), 152 U.S. 596, 38 L. Ed. 565, 14 S. Ct. 70) is inapposite. There, the debtor was insolvent. In this case, PSC has been shown to have relatively little in operating finances, but has not been proved incapable of paying its creditors. Were PSC obliged to pay out

the full amount of liquidated damages at this point, PSC's insolvency would be a certainty. However, PSC's assets and financial condition were known to Vasso at the time the parties agreed to become partners. Vasso cannot contend that its partner's potential insolvency in the event of a wrongful termination by it was unforeseeable at the time of contracting. We do not find that the equities so clearly favor Vasso as to require application of the doctrine of equitable setoff in disregard of the parties' agreement for installment payments.

Further, our reading of section 38(2) of the Uniform Partnership Act fails to persuade us that the statute requires a setoff of the liquidated damages. That section permits the partner causing the dissolution (PSC) to have the value of *its* interest in the partnership, less "any damages recoverable [by Vasso]" (subparagraph (b)) or "any damages caused [by PSC]" (subparagraph (c)), paid in cash. It does not require a cash setoff, however, in the unusual event (this case) wherein damages exceed the value of the terminating partner's interest.

■ Where, as here, a valid liquidated damages clause is enforceable, that clause may be implied into the statute to the extent that it does not violate the legislative intent of the Act. We do not believe that the legislative purpose of stabilizing business (*Kurtzon v. Kurtzon* (1950), 339 Ill. App. 431, 90 N.E.2d 245) is frustrated by limiting Vasso's statutory setoff to past accrued damages and enforcing the payout terms of the parties' agreement. Under the circumstances, we perceive of no compelling grounds, legal or equitable, for ignoring or rewriting paragraph 11 of the parties' agreement. Therefore, all statutory references to "damages" recoverable by Vasso are supplanted by the parties' agreement for liquidated damages. As the trial court properly ruled, enforcement of the agreement results in a judgment for PSC in the amount of its share of the value of the partnership assets ($165,000) set off by past due installments of liquidated damages accrued from the date of the partnership's termination (March 17, 1983), and an ongoing obligation to pay out the balance monthly during the 10-year period which would end in March of 1993.

Vasso also contends on appeal that it has a right to set off pursuant to section 12—177 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 12—177). It does not appear, however, that this argument was presented in the trial court. Accordingly, the argument is waived and will not be considered in this disposition.

For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

Affirmed.

WOMBACHER, J., concurs.

JUSTICE STOUDER, concurring in part and dissenting in part:

I generally agree with the result of the majority. I cannot, however, accept the majority's conclusion the defendant is entitled to retention of the patents.

The Uniform Partnership Act (UPA) is the result of an attempt to codify and make uniform the common law. Partners must act pursuant to the provisions of the Act which apply when partners have not agreed how they will organize and govern their ventures. These UPA provisions are best viewed as "default" standards because they apply in the absence of contrary agreements. The scope of the Act is to be determined by its provisions and is not to be construed to extend beyond its own proper boundaries. When the partnership contract contains provisions, imposing on one or more of the partners obligations differing from those which the law ordinarily infers from the partnership relation, the courts should strive to construe these provisions so as to give effect to the honest intentions of the partners as shown by the language of the contract and their conduct under it. See Hillman, *Power Shared and Power Denied: A Look at Participatory Rights in the Management of General Partnerships*, 84 U. Ill. L.F. 865 (1984); 59 Am. Jur. 2d *Partnership* secs. 33 through 38.

The plaintiff (PSC) brought this action at law seeking dissolution of the partnership before expiration of the agreed term of its existence. Under the Uniform Partnership Act where dissolution is caused by an act in violation of the partnership agreement, the other partners are accorded certain rights. The partnership agreement is a contract, and even though a partner may have the power to dissolve, he does not necessarily have the right to do so. Therefore, if the dissolution he causes is a violation of the agreement, he is liable for any damages sustained by the innocent partners as a result thereof. The innocent partners also have the option to continue the business in the firm name provided they pay the partner causing the dissolution the value of his interest in the partnership. Ill. Rev. Stat. 1983, ch. 106½, pars. 38(1), (2).

The duties and obligations of partners arising from a partnership relation are regulated by the express contract as far as they are covered thereby. A written agreement is not necessary but where it does exist it constitutes the measure of the partners' rights and obligations. While the rights and duties of the partners in relation to the

partnership are governed by the Uniform Partnership Act, the Uniform Act also provides that such rules are subject to any agreement between the parties. (See Ill. Rev. Stat. 1983, ch. 106½, pars. 8, 9, 18, 27, 37, 38, 40, 42, 43). It is where the express contract does not cover the situation or question which arises that they are determined under the applicable law, the Uniform Partnership Act. 59 Am. Jur. 2d *Partnership* sec. 33, at 955-56.

The partnership agreement entered into by PSC and Vasso, in pertinent part, provides:

> "3.B.(2) [PSC] grants to the partnership exclusive license without charge for its patent rights *** for the term of this agreement. *** [I]t being understood and agreed that same shall remain the property of [PSC] *** and shall be returned to [PSC] at the expiration of this partnership ***."

The majority holds this provision in the contract is unenforceable. The only apparent reason for such holding is that its enforcement would affect defendant's option to continue the business. No authority is cited to support such a rule.

The partnership agreement further provides:

> "11. *** If either party shall terminate or dissolve said [partnership], the terminating party shall pay to the other party as liquidated damages [$384,612]."

This provision becomes operative at the same time as the provision relating to the return of the patents.

Partnership agreements are governed by the same general rules of construction as are other written agreements. If their provisions are explicit and unambiguous and do not violate the duty of good faith which each partner owed his copartners, the courts should carry out the intention of the parties. The Uniform Partnership Act should not be construed to invalidate an otherwise enforceable partnership agreement entered into for a legitimate purpose. *Adams v. Jarvis* (1964), 23 Wis. 2d 453, 127 N.W.2d 400.

Here, express terms of the partnership agreement deal with the status of the patents and measure of damages, the question is settled thereby. I think it clear the parties agreed the partnership only be allowed the use of the patents during the term of the agreement. The agreement having been terminated, the right to use the patents is terminated. The provisions in the contract do not conflict with the statutory option to continue the business and even if there were a conflict the provisions of the contract should prevail. The option to continue the business does not carry with it any guarantee or assurance of success and it may often well be that liquidation rather than continuation

1024

would be the better option for a partner not at fault.

As additional support for my conclusion, it appears the liquidated damages clause was insisted upon by the defendant because of earlier conduct of the plaintiff withdrawing from a former partnership. Thus, the existence of the liquidated damages clause recognizes the right of plaintiff to withdraw the use of his patents in accordance with the specific terms of the partnership agreement. Since liquidated damages depends on return of the patents, I would vacate that part of the judgment providing defendant is entitled to continue use of the patents and provide that use shall remain with plaintiff.