## In re WISTON XXIV LIMITED PARTNERSHIP.

### BALCOR PENSION INVESTORS V, Plaintiff/Appellee/Cross–Appellant,

### v.

### WISTON XXIV LIMITED PART-NERSHIP, Defendant/Appellant/Cross–Appellee.

Civ. A. No. 93–4097–DES.
Bankruptcy No. 91–40410–11.

United States District Court, D. Kansas.

July 15, 1994.

454

William H. Zimmerman, Jr., Minter, Case & Zimmerman, Wichita, KS, Joel Pelofsky, Shughart, Thomson & Kilroy, Kansas City, MO, for Wiston XXIV Ltd. Partnership.

Harry D. Dixon, Jr., Dixon & Dixon P.C., Omaha, NE, for Robert L. Thompson and Wiston Management Inc.

Jonathan A. Margolies, McDowell, Rice & Smith, P.C., Kansas City, MO, Michael L. Molinaro, Katten, Muchin & Zavis, Chicago, IL, for Balcor Pension Investors V.

Daniel M. Runion, Western Resources, Inc., Topeka, KS, Douglas G. Peterson, Mis-

souri Gas Energy, Law Div., Kansas City, MO, for Western Resources, Inc.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the appeal taken by the debtor, Wiston XXIV Limited Partnership ("Wiston") from the orders of the bankruptcy court filed on April 2, 1993, denying confirmation of the debtor's fourth amended plan of reorganization under Chapter 11 and granting relief from the automatic stay to Wiston's primary creditor, Balcor Pension Investors V ("Balcor").[1] Balcor cross-appeals from the order denying confirmation and from certain other orders of the bankruptcy court.

The facts underlying this dispute have previously been set forth in the memorandum decision of this court filed November 12, 1992. *See In re Wiston XXIV Ltd. Partnership,* 147 B.R. 575, 577–78 (D.Kan.1992), *appeal dismissed,* 988 F.2d 1012 (10th Cir. 1993). On remand, the bankruptcy court entered orders on April 2, 1993, denying confirmation of the debtor's fourth amended plan and granting Balcor relief from the automatic stay so that it could proceed with the foreclosure sale of the debtor's apartment complex. Wiston, pursuant to Bankruptcy Rule 9023, timely filed a motion for reconsideration.

A hearing was held on the motion to reconsider on April 13, 1993, at which time the bankruptcy court orally issued its ruling denying Wiston's motion to reconsider. The bankruptcy court directed counsel for Balcor to prepare and submit a written order. The court signed the order denying reconsideration on April 20, 1993. The order was entered on the bankruptcy court's docket on April 21, 1993.

Wiston filed its notice of appeal with the clerk of the bankruptcy court, pursuant to Bankruptcy Rule 8001(a), on April 20, 1993. The notice of appeal stated Wiston's intent to appeal the final judgments entered by the bankruptcy court on April 2, 1993. On April 30, 1993, Balcor filed its notice of cross-appeal as permitted by Bankruptcy Rule 8002(a).

Balcor contends that this court lacks subject matter jurisdiction to consider Wiston's appeal because its notice of appeal was untimely filed. The court agrees, but for different reasons than those advanced by Balcor.[2]

The untimely filing of a notice of appeal is a jurisdictional defect barring appellate review. *E.g., In re Herwit,* 970 F.2d 709, 710 (10th Cir.1992); *In re Slimick,* 928 F.2d 304, 306 (9th Cir.1990); *In re Colorado Energy Supply, Inc.,* 728 F.2d 1283, 1285 (10th Cir.1984); *In re Cordry,* 149 B.R. 970, 975 (D.Kan.1993); *see* Fed.R.Bankr. 8001(a)

---

1. Subsequent to its order granting Balcor relief from the automatic stay, the bankruptcy court nevertheless granted Wiston's motion seeking a stay pending the outcome of this appeal. Balcor's motion to vacate the stay order was denied by this court in an order filed November 18, 1993 (Doc. 14).

2. Balcor's untimeliness argument relies on an appeal Wiston attempted to take directly to the Tenth Circuit Court of Appeals on the basis of an order entered April 12, 1993. In that order, the bankruptcy court held that it had afforded adequate protection to Balcor's cash collateral. Wiston filed a notice of appeal in the Tenth Circuit on or about May 7, 1993, seeking to appeal the April 12 order of the bankruptcy court as well as this court's November 12, 1992, decision holding that the post-petition rents generated by the apartment complex constituted Balcor's cash collateral. The Tenth Circuit dismissed, holding that Wiston should have first appealed the bankruptcy court's April 12 decision to the district

court. *See In re Wiston XXIV Partnership,* No. 93–3142 (10th Cir. Oct. 5, 1993).

We note that the decision entered on April 12 by the bankruptcy court did not address the issue Wiston seeks to appeal: whether this court properly characterized the post-petition rents as Balcor's cash collateral. Instead, the order entered April 12 simply determined, apparently in belated response to. this court's remand order, that adequate protection had been afforded to Balcor's cash collateral and no additional protection was warranted. Wiston lacks standing to appeal an order by which it is not aggrieved. *See, e.g., In re Andreuccetti,* 975 F.2d 413, 416–17 (7th Cir.1992). Thus, even if the notice of appeal had been filed within ten days of April 12, 1993, Wiston's appeal from that order could not have proceeded in this court. The only orders Wiston has standing to appeal are the decisions denying confirmation of the fourth amended plan and granting Balcor relief from the automatic stay, both entered April 2, 1993.

(failure of appellant to take any step other than timely filing of notice of appeal does not affect validity of appeal). The court may consider the timeliness of an appeal *sua sponte. In re Nucorp Energy, Inc.,* 812 F.2d 582, 584 (9th Cir.1987); *In re Stagecoach Utilities, Inc.,* 86 B.R. 229, 230 (9th Cir. BAP 1988).

█ As a general rule, the notice of appeal must be filed with the clerk of the bankruptcy court within ten days of the entry date of the judgment or order from which the appeal was taken. Fed.R.Bankr. 8002(a). The filing date is the date the notice of appeal was received by the bankruptcy court clerk. Fed.R.Bankr. 8008(a); *In re Herwit,* 970 F.2d at 710 n. 2. In this instance, Wiston brings its appeal from the order denying confirmation and granting relief from the stay, entered on April 2, 1993. Under the general rule, therefore, Wiston's notice of appeal filed with the bankruptcy clerk on April 20, 1993, would have been untimely.

█ However, a motion to reconsider pursuant to Rule 9023 [3] brings into question the correctness of the underlying decision, and therefore tolls the time for filing a notice of appeal until entry of the order granting or denying the motion to reconsider. *See In re Shields,* 150 B.R. 259, 260 (D.Colo.1993); *In re Frontier Airlines, Inc.,* 108 B.R. 274, 275–76 & n. 3 (D.Colo.1989). In this event, Rule 8002(b) governs the time for filing the notice of appeal. It reads as follows:

**(b) Effect of motion on time for appeal**

If a timely motion is filed by any party: (1) under Rule 7052(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (2) under Rule 9023 to alter or amend the judgment; or (3) under Rule 9023 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. *A notice of appeal filed before the disposition of any of the above motions shall have no effect;* a new

notice of appeal must be filed. No additional fees shall be required for such filing. (Emphasis added.) Hence, when a timely motion is filed to reconsider or to alter or amend the bankruptcy court's order, the ten-day time for filing the notice of appeal runs from the date of *entry* of the order granting or denying the motion. *In re American Freight System, Inc.,* 153 B.R. 316, 319 (D.Kan.1993).

█ The time requirements of Rule 8002 are strictly construed and require strict compliance. *See In re Herwit,* 970 F.2d at 710; *In re Slimick,* 928 F.2d at 306; *In re Souza,* 795 F.2d 855, 857 (9th Cir.1986); *In re Weston,* 139 B.R. 543, 546 (D.Utah 1992), *aff'd,* 18 F.3d 860 (10th Cir.1994). The language of the rule explicitly requires the notice of appeal to be filed within the ten days *after* the entry of the order denying reconsideration. *In re Sweet Transfer & Storage, Inc.,* 896 F.2d 1189, 1192 (9th Cir.1990). Notice filed before entry or more than ten days later is ineffective. *Id.* This rule is consistent with the principle that a judgment of the bankruptcy court is final, and therefore appealable, only after it has been entered on the docket of the bankruptcy case. *See* Fed. R.Bankr. 9021(a) (judgment effective when entered pursuant to Rule 5003); Fed. R.Bankr. 5003(a) (entry of judgment or order in a docket shall show the date entry is made); *see also In re Rozark Farms, Inc.,* 139 B.R. 463, 464 (E.D.Mo.1992).

█ In this case, Wiston's notice of appeal was received by the bankruptcy court clerk and filed on April 20, 1993. Although the bankruptcy court orally denied the motion to reconsider on April 13, 1993, the written order he signed on April 20 was not *entered* by the bankruptcy court clerk until April 21, 1993. To take an appeal, Wiston was therefore required to file its notice of appeal within the ten day period commencing with the date the document was entered representing final disposition of the issue from which the appeal was taken, in this case April 21, 1993. *See In re Weston,* 139 B.R. at 547 (time for appeal commences with en-

---

**3.** A motion to reconsider may be construed as a motion to alter or amend. *See In re Crystal Sands Properties,* 84 B.R. 665, 668 n. 3 (9th Cir.

BAP 1988); *In re Shields,* 150 B.R. 259, 260 (D.Colo.1993).

try of document representing final disposition of issue appealed from); *see also Stelpflug v. Federal Land Bank of St. Paul,* 790 F.2d 47, 49–50 (7th Cir.1986) (entry of judgment means the date of docket entry).

Wiston's notice of appeal filed one day early was therefore premature and ineffective under Rule 8002(b). *See In re Sweet Transfer & Storage,* 896 F.2d at 1191–92 (motion for reconsideration orally denied July 24, 1987; first notice of appeal filed July 24; order denying reconsideration and judgment signed and filed July 28; amended notice of appeal filed July 29; orders appealed from entered August 6; notice of appeal held prematurely filed and appeal dismissed); *In re Rozark Farms, Inc.,* 139 B.R. at 464 (motion to amend and notice of appeal filed February 4, 1991; motion to amend denied on February 5; written order entered on docket February 6; notice of appeal held prematurely filed and appeal dismissed); *In re Crystal Sands Properties,* 84 B.R. 665, 668 (9th Cir. BAP 1988) (motion for reconsideration filed October 14, 1986; notice of appeal filed October 28; motion for reconsideration denied at hearing held November 11; order entered denying reconsideration December 3; notice of appeal held premature and appeal dismissed); *see also In re Blinder, Robinson & Co., Inc.,* 127 B.R. 267, 276 (D.Colo.1991) (distinguishing *In re Sweet Transfer & Stor-*

*age* after discussing it with approval).[4] Wiston's appeal must therefore be dismissed for lack of jurisdiction, because its notice of appeal was untimely filed.

█  Although the notice of appeal filed by Wiston was a nullity, Balcor's notice of cross-appeal was filed within ten days after entry of the order denying reconsideration and therefore may be construed as a timely notice of appeal. *See* Fed.R.Bankr. 8002(b) (time for appeal for *all parties* runs from entry of order granting or denying motion).

In its appellate brief, Balcor limits its appeal to a challenge of the bankruptcy court's order entered on June 9, 1992, in which the court refused to include as part of Balcor's claim liquidated damages under a provision of the promissory note Wiston had executed in favor of Balcor. The note provided for the debtor to pay ordinary interest at specified rates that increased over the life of the loan, various types of additional interest, attorney's fees and costs in the event Balcor employed counsel with respect to the note and mortgage, and, upon default, late charges and a higher interest rate. In addition, the note required Wiston, upon default, to pay liquidated damages in accordance with the following provision:

4. *Liquidated Damages.* If a "Default" (as hereinafter defined) occurs which is not cured within any applicable grace period

---

4. If an appellant has not tolled the time for filing an appeal by filing one of the kinds of motions listed in Rule 8002(b), a notice of appeal filed subsequent to an oral decision or order, but before entry of the written order or judgment appealed from, has been held not to be untimely. *See In re Blinder, Robinson & Co., Inc.,* 127 B.R. at 276; *see also Raleigh Inn, Inc. v. BWAC Liquidation Corp.,* 122 B.R. 253, 254 (W.D.N.C.1990) (plaintiff appealed from orders made in open court September 10, 1990, denying plaintiff's motions to compel discovery and for partial summary judgment, and granting defendant's motions for protective order and summary judgment; plaintiff's notice of appeal filed September 18, 1990; written order entered October 4, 1990; notice of appeal held timely filed).

Effective August 1, 1991, Rule 8002(a) was amended to specifically provide, "A notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof." This amendment was intended to conform Rule 8002(a) to Fed.

R.App.P. 4(a)(2). *See In re Defender Drug Stores, Inc.,* 127 B.R. 225, 232 n. 3 (9th Cir. BAP 1991). However, both Rule 8002(b) and its counterpart, Fed.R.App.P. 4(a)(4), provide that when particular kinds of motions are filed that have the effect of tolling the time for filing the notice of appeal, such as a motion to reconsider, a notice of appeal filed before *entry* of the order or judgment disposing of such a motion is ineffective. *See Acosta v. Louisiana Dep't of Health and Human Resources,* 478 U.S. 251, 254, 106 S.Ct. 2876, 2877, 92 L.Ed.2d 192 (*per curiam*) (under Fed. R.App.P. 4(a)(4), notice of appeal is ineffective unless filed after entry of judgment on a Rule 59 motion or any other motions listed therein), *reh'g denied,* 478 U.S. 1036, 107 S.Ct. 23, 92 L.Ed.2d 774 (1986); *In re Sweet Transfer & Storage,* 896 F.2d at 1192 (courts construe Fed.R.Bankr. 8002(b) in the same manner as Fed.R.App.P. 4(a)(4)); *Nicoladze v. Lawler,* 86 B.R. 69, 72 (N.D.Tex.1988) (Rule 8002(b) is parallel to Fed. R.App. 4(a)(4)); *In re Crystal Sands Properties,* 84 B.R. at 667 (Rule 8002(b) is adopted from Fed. R.App.P. 4(a)(4) and is essentially the same as that rule).

prior to the expiration of the seventh (7th) Loan Year, Lender shall suffer damages and opportunity costs, which are difficult or impossible to ascertain as of the date hereof. Therefore, in such event, and in addition to the Indebtedness and all interest accrued hereunder, including all Additional Interest then due Lender, Borrower shall pay to Lender as so much additional Indebtedness and as liquidated damages, an amount equal to the Annual Amount shown below for the Loan Year in which the Default occurs:

| Loan Year | Annual Amount |
|-----------|---------------|
| ... | ... |
| 4 | $1,248,172 [5] |

Balcor claims that under this provision, liquidated damages in the amount of $1,248,172 were immediately due and owing Balcor as of February 19, 1991, when Balcor notified Wiston of its default and that it had accelerated the balance due on the note.

According to the undisputed testimony of Jane Hunt, a certified public accountant employed by a Balcor affiliate, the liquidated damages clause was designed to ensure that Balcor received a minimum 9.2 percent yield over the life of the loan, calculated by averaging the increasing interest rates provided for in the note. The specific amount of liquidated damages claimed by Balcor was calculated, according to the testimony, as the present value of all amounts to be received by Balcor under the note in the future following the default, less unspecified amounts Balcor expected to receive if it took over operation of the property, discounted to present value.

■■■■■ The enforceability of a liquidated damages provision in a bankruptcy proceeding is governed by state law. *See In re United Merchants and Mfrs., Inc.,* 674 F.2d 134, 141 (2d Cir.1982); *Dacon Bolingbrook Associates. Ltd. Partnership v. Federal Nat'l Mortgage Ass'n,* 155 B.R. 467, 473 (N.D.Ill. 1993); *In re Kroh Bros. Dev. Co.,* 88 B.R. 997, 999 (Bankr.W.D.Mo.1988); *In re Skyler Ridge,* 80 B.R. 500, 504 (Bankr.C.D.Cal.

1987). The promissory note in question contains a choice-of-law provision designating Illinois law as governing its validity and enforcement. Illinois law is therefore controlling on the issue of whether the liquidated damages clause is enforceable. *See In re Skyler Ridge,* 80 B.R. at 504 (applying Kansas law where note provided it was to be construed pursuant to Kansas law).

■■■■ Balcor does not challenge the bankruptcy court's legal ruling that a liquidated damages provision is enforceable only if the amount is a reasonable forecast of just compensation for the harm that is likely to be caused by the breach, and such harm that is caused by the breach is incapable or very difficult of accurate estimation. *See United Order of American Bricklayers and Stone Masons Union No. 21 v. Thorleif Larsen and Son, Inc.,* 519 F.2d 331, 332 (7th Cir. 1975) (quoting Restatement (First) of Contracts § 339, although erroneously citing to the Restatement (Second) of Contracts); *In re Schaumberg Hotel Owner Ltd. Partnership,* 97 B.R. 943, 953 (N.D.Ill.1989) (citing *United Order of American Bricklayers*); *Pav–Saver Corp. v. Vasso Corp.,* 143 Ill. App.3d 1013, 97 Ill.Dec. 760, 764, 493 N.E.2d 423, 427 (1986) (quoting Restatement (Second) of Contracts § 356(1)). Recent cases on point decided by the Illinois courts have adopted § 356(1) of the Second Restatement of Contracts, which reads as follows:

**§ 356. Liquidated Damages and Penalties**

(1) Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

*See, e.g., Likens v. Inland Real Estate Corp.,* 183 Ill.App.3d 461, 131 Ill.Dec. 829, 832, 539 N.E.2d 182, 185 (1989), *appeal denied,* 129 Ill.2d 564, 140 Ill.Dec. 672, 550 N.E.2d 557 (1990); *Pav–Saver Corp. v. Vasso Corp.,* 97

---

**5.** The liquidated damages clause provided for decreasing amounts for each of the first seven years of the loan term, during which the note was not prepayable. If default occurred in years eight, nine, or ten, the note provided for liquidated damages in the amount of the premium required in the event of prepayment.

Ill.Dec. at 764, 493 N.E.2d at 427. If a liquidated damages clause does not meet these requirements, it is deemed an unenforceable penalty provision, with the injured party recovering only those damages established by proof pursuant to common law principles. *See Lake River Corp. v. Carborundum Co.,* 769 F.2d 1284, 1292 (7th Cir. 1985) (applying Illinois law); *In re Skyler Ridge,* 80 B.R. at 503, 504, 506.

The bankruptcy court determined that the liquidated damages provision was not a reasonable forecast of the harm the debtor's breach would likely cause Balcor. Further, the court determined that Balcor's actual damages as a result of Wiston's default would not be difficult or impossible to determine as of the time of the default. Hence, the bankruptcy court concluded that the liquidated damages provision was simply an unenforceable penalty.

The question of whether a provision for damages is a liquidated damages clause or a penalty provision is a question of law rather than fact. *Lake River Corp. v. Carborundum Co.,* 769 F.2d at 1290; *Hickox v. Bell,* 195 Ill.App.3d 976, 142 Ill.Dec. 392, 399, 552 N.E.2d 1133, 1140, *appeal denied,* 132 Ill.2d 545, 555 N.E.2d 376 (1990). Consequently, since the bankruptcy court's decision is challenged on appeal, this court must review the issue *de novo. See In re Burkart Farm and Livestock,* 938 F.2d 1114, 1115 (10th Cir.1991); *In re Scarlata,* 127 B.R. 1004, 1007 (N.D.Ill.1991) (citing *In re Excalibur Automobile Corp.,* 859 F.2d 454, 457 n. 3 (7th Cir.1988)); *aff'd in part,* 979 F.2d 521 (7th Cir.1992).

The burden of persuading the court that a liquidated damages clause is void as a penalty rests with the party resisting its enforcement. *See Yockey v. Horn,* 880 F.2d 945, 952 (7th Cir.1989) (applying Illinois law); *In re Schaumberg,* 97 B.R. at 953; *Pav-Saver Corp. v. Vasso Corp.,* 97 Ill.Dec. at 764, 493 N.E.2d at 427; *cf. In re United Merchants & Mfrs., Inc.,* 674 F.2d at 143 (burden on party seeking to defeat an otherwise valid liquidated damages clause to prove no damages were actually suffered before seeking disallowance of such claims in bankruptcy). In doubtful cases, the Illinois courts resolve the issue in favor of classification as a penalty. *Lake River Corp.,* 769 F.2d at 1290 (citing, *e.g., Stride v. 120 West Madison Bldg. Corp.,* 132 Ill.App.3d 601, 87 Ill.Dec. 790, 793, 477 N.E.2d 1318, 1321 (1985)).

In determining whether a liquidated damages provision is enforceable, the court must consider two factors in combination. *See* Restatement (Second) of Contracts § 356(1), cmt. b (1979). The first factor is whether the amount of liquidated damages equates to a reasonable approximation of the anticipated or actual loss caused by the breach. This determination is made from two different points in time. The amount of liquidated damages is deemed reasonable if it either (1) approximates the actual loss that has resulted from the breach, or (2) approximates the loss anticipated at the time the contract was made. *Id.; see Yockey v. Horn,* 880 F.2d at 955. *But cf. Lake River Corp.,* 769 F.2d at 1289 (liquidation of damages must be reasonable estimate at the time of contracting of the likely damages from breach). The second factor the court must consider is the difficulty of proof of loss, determined as of the time of the breach. *See* Restatement (Second) of Contracts § 356(1) cmt. b. These two factors are not mutually exclusive. Rather, the greater the difficulty of either establishing that harm has occurred or quantifying the amount of the harm with reasonable certainty, the easier it is to show that the liquidated amount of damages is a reasonable approximation. On the other hand, if there is relatively little difficulty in determining the actual harm, less latitude is permitted in approximating the loss. *Id.* For example, if it is clear at the time of the breach that no loss has occurred, a liquidated damages provision fixing a substantial sum as damages will not be enforced, even if it might have been a reasonable approximation of the possible loss under other circumstances. *See id.* & Illustration No. 4.

The bankruptcy court held, without citation to authority, that "the requirement that actual damages be difficult to determine does not apply as of the time the contract is made, but at the time of the breach." Although we agree with this conclusion of law, the status

of Illinois law on this point is unclear. In *Pav–Saver Corp. v. Vasso Corp.*, the Illinois Appellate Court stated that the difficulty or ease of proof of loss is to be determined *at the time of contracting*, not at the time of breach. 97 Ill.Dec. at 764, 493 N.E.2d at 427 (citing Restatement (Second) of Contracts § 356, cmt. b). Further, the Illinois Appellate Court has subsequently applied the rule in a similar manner. *See Likens v. Inland Real Estate Corp.*, 131 Ill.Dec. at 832, 539 N.E.2d at 185 (*at the time agreement was entered into*, it would have been difficult to ascertain the length of time necessary to find another suitable tenant; liquidated damages provision held enforceable).[6] *But see Hickox v. Bell*, 142 Ill.Dec. at 400, 552 N.E.2d at 1141 (since a determination of actual damages *in the event of a breach* would not be difficult, liquidated damages clause held unenforceable); *see also Yockey v. Horn*, 880 F.2d at 952 (need for estimation must be shown by reference to likely difficulty of measuring actual damages *after the breach occurs*); *Lake River Corp.*, 769 F.2d at 1289–90 (need for estimation at time of contracting must be shown by reference to likely difficulty of measuring actual damages *after the breach occurs*).

■ After carefully considering comment b to § 356(1) of the Restatement (Second) of Contracts and the associated illustrations, this court is persuaded that the bankruptcy court was correct in holding that the difficulty or ease of proof of damages is to be considered *as of the time of the breach*, not as of the time of contracting. The value of a liquidated damages clause is to save the time of courts, juries, parties, and witnesses in assessing the amount of damages, especially if the amount in controversy is small. *See* Restatement (Second) of Contracts § 356(1) cmt. a. If actual damages may be readily ascertained at the time of the breach, the existence of a liquidated damages clause has little value for all parties concerned, except a party who would benefit from enforcement of such a clause because it overstates the actual harm caused by the breach. Thus, a liqui-

dated damages provision will be set aside in favor of actual damages if they can be ascertained with reasonable certainty as of the time of the breach.

■ Given the nature of the agreement in this case, Balcor's contract damages at the time of the debtor's default were not difficult to calculate or prove. As the bankruptcy court noted, the amount of Balcor's expectation damages could be calculated with reasonable certainty at the time of the default simply by comparing the remaining amounts payable under the note with the amounts Balcor could obtain if it were to loan the balance of the principal to another borrower for the remaining life of the ten-year loan, and reducing this sum to its present value. Although Balcor's damages on default of the non-recourse note could justifiably include the costs of recovering the property that secured the note, other provisions of the contract allowed for payment of additional amounts associated with such direct costs.

Since Balcor's actual damages in the event of Wiston's default on the note were not especially difficult to ascertain when viewed at the time of default, we agree with the bankruptcy court as a matter of law that the liquidated damages clause is not enforceable. *See Hickox v. Bell*, 142 Ill.Dec. at 400, 552 N.E.2d at 1141; *see also In re Schaumberg*, 97 B.R. at 953–54 (if damages are easily calculable, prepayment penalty will be disallowed).

■ We also agree with the bankruptcy court's determination that the amount due Balcor under the liquidated damages provision was not reasonable in light of either the anticipated or actual loss caused by the breach. The note, in the principal amount of $10,850,000, was payable over a ten-year term, and the default did not occur until the fourth year. The liquidated damages provision called for a payment of $1,248,172, in excess of 11.5 percent of the entire principal amount, even after Wiston made installment and interest payments on the note for nearly one third of the loan term at the rate of 8.5

---

6. *See also In re Schaumberg*, 97 B.R. at 953 (damages not calculable when parties executed loan documents).

to 9.0 percent. Balcor also held a mortgage on the apartment complex and an assignment of rents to secure the note. The liquidated damages clause therefore calls for an amount which is excessive as compared to the loss that could reasonably have been anticipated at the time the contract was executed. Although Balcor's actual losses are not yet definite, it appears to this court that upon the sale of the property, the net loss to Balcor, after deducting the proceeds of the sale and reinvesting that amount for the remainder of the loan term, would not approach the amount claimed as liquidated damages. Since the liquidated damages provision fixed an unreasonably large amount, it is unenforceable as a penalty on public policy grounds.[7]

■ Even if the liquidated damages provision was deemed enforceable under the law of Illinois, we agree with the bankruptcy court that Balcor is not entitled to add the amount specified in the clause to its claim against the debtor in bankruptcy. According to the testimony of Jane Hunt, the liquidated damages amount was calculated to include post-petition interest over the life of the loan. However, unmatured interest is not recoverable by an undersecured creditor as part of its claim. *See* 11 U.S.C. § 502(b)(2); *see also United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 372–73, 108 S.Ct. 626, 630–31, 98 L.Ed.2d 740 (1988); *In re Busman*, 5 B.R. 332, 336 (Bankr. E.D.N.Y.1980).

**IT IS BY THE COURT THEREFORE ORDERED** that the appeal filed by Wiston XXIV Limited Partnership is hereby dismissed for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that the order of the bankruptcy court entered June 9, 1992, holding that the liquidated damages provision in the note executed by Wiston in favor of Balcor is unenforceable, is hereby affirmed.

---

**7.** Given our disposition of this issue, it is unnecessary to address Wiston's alternative argument that 11 U.S.C. § 506(b) bars Balcor from recovering unreasonable liquidated damages. It is undisputed that Balcor is an undersecured creditor. Since § 506(b) applies only to oversecured creditors, it does not apply to this dispute.